## McMurtry *vs.* Giveans.

To legalize the taking of seven per cent. interest on contracts by virtue of the supplements to the act concerning usury, the contract must be actually made within one of the districts specified in the act.

*Whitehead,* for complainant.

*Williamson,* for defendant.

The Chancellor. The bill is filed to foreclose a mortgage given, on the 25th of February, 1856, by William D. Giveans and Samuel Giveans to William McMurtry to secure the payment of $3000, with interest at the rate of seven per cent. per annum. The answer of William D. Giveans, the principal debtor, (the other obligor having joined in the bond and mortgage as a surety) sets up usury as a defence.

The question at issue involves the true construction of the supplement to the act against usury, approved March 2d, 1854, *Nix. Dig.* 373, § 8, and of the further supple-

ment to the said act, approved April 6th, 1855, *Nix. Dig.* 374, § 10, *Pamph. Laws* 752.

The act of March 2d, 1854, authorizes interest to be taken at the rate of seven per cent. upon all contracts thereafter made in either of the counties of Hudson or of Essex, or in the city of Paterson; *provided,* that *each one* of the parties to such contract shall, at the making thereof, reside either within the limits of said counties or city or out of the state.

The act of 1855, after reciting that doubts had arisen in relation to the proper construction of the act of 1854, declares that the said act shall be taken and construed to legalize *all contracts made* since the said act went into operation for the loan or forbearance of money upon interest at the rate of seven per cent.; *provided* the *contracting parties,* or *either* of them, *was* or *shall* be at the time of making the contract resident of or located in either the counties of Hudson or Essex or the city of Paterson or out of this state.

The design of the last statute, as appears by the preamble, was to remove doubts which had arisen in relation to the proper construction of the former act. What those doubts were is not expressly stated; but from the enactment of the statute, as well as from its preamble, the obvious presumption is that the doubts existed in relation to the proviso of the statute, which requires *each one* of the contracting parties to reside within the districts specified or out of the state, and that the design of the statute was simply to remove those doubts by altering the language of the proviso and rendering it less ambiguous.

Limited to this object, the simple effect of the act of 1855 was to legalize all contracts made or to be made within the districts specified, provided that both or either of the contracting parties resided within either of those districts or out of the state. But the language of the act is much more comprehensive. It contains no reference whatever to the place of making the contracts. In terms,

therefore, the act not only comprehends all contracts made within the counties of Hudson or Essex or within the city of Paterson, but *all contracts wherever made*, provided both or either of the contracting parties resided within the limits specified or out of the state. And such it is insisted must be the construction of the statute.

The effect of this construction would be to strike from the act of 1854 the entire clause in relation to the place of the contract, and confine its operation to the *residence* of the contracting parties. It would legalize contracts for interest at seven per cent. in every part of the state, provided either of the contracting parties lived out of the state or within certain specified limits within the state. This would, indeed, place the law regulating the rate of interest upon a most unsatisfactory basis. The right to charge seven per cent. interest would not be confined to any locality. It would not be regulated by the place of the contract, but solely by the residence of the contracting parties. Such result never could have been within the contemplation of the legislature. The design of the legislature, in both acts, was to legalize contracts for interest at seven per cent. for the benefit (real or supposed) of the residents of the localities or districts specified in the act. That such was the design of the legislature is abundantly manifested by reference to contemporaneous legislation. Thus the county of Union having been set off from the county of Essex in 1857, doubts arose whether the operation of the act of 1854, which was limited in terms to the counties of Hudson and Essex, would extend to the county of Union, although that territory was included within the limits of Essex at the passage of the act. To remove those doubts, by an act approved February 18th, 1858, (*Pamph. Laws* 89) it was enacted that all contracts made in the county of Union, after the creation of that county by virtue of the act of 1854, for the loan or forbearance of money, with interest at the rate of seven per cent., should be valid and legal in the same manner and

2 G*

to the same extent as authorized by the act of 1854 in the county of Essex. This act has clear reference to the locality of the ·contract as well as to the residence of the contracting parties. In like manner, the act of February 6th, 1858, (*Pamph. Laws* 34), the act of March 18th, 1858, (*Pamph. Laws* 475), and the act of 1860, (*Pamph. Laws* 111), which extend the operation of the law authorizing interest to be taken at the rate of seven per cent. to the county of Bergen, to a part of the township of Woodbridge, and to the township of Acquackanonck, all require that the contract should be made within the limits of those districts respectively. In all the legislation on this subject it is apparent that the legislature designed that the place of the contract should be the test of the legality of the interest, in accordance ·with the familiar principle, that the validity and construction of the contract are to be determined by the *lex loci contractus.*·

This interpretation of the act is in accordance not only with the design· of the legislature, as manifested by contemporaneous legislation, but is sanctioned by well settled principles of construction. In the construction of statutes, reference must always be had to the subject matter of the law, *that* alone being supposed to be within the mind ·of the legislator. The act of 1855, as appears by its title and preamble, is explanatory of the act of 1854, and was passed for the purpose of removing doubts which had arisen in relation to the proper construction of that act. Now the design of the act of 1854 was to legalize interest at the rate of seven per cent. within certain specified limits. The subject matter of that act was contracts made within those limits only. The subject matter of the explanatory act of 1855 was identical with that of 1854, *viz.* contracts made within those limits only. When, therefore, the legislature, in the.act of 1855, legalized *all* contracts bearing interest at seven per cent. made. after the act of 1854, they must be understood as having in

contemplation all contracts within the purview of that act, and made under color of its authority.

The language of the act of 1855 is prospective as well as retrospective in its operation. It is on this ground alone that the complainant can avail himself of its provisions, as his mortgage was given after the act went into operation. Its effect is to legalize not only contracts then made, but also such as should be thereafter made. It was obviously designed as a legislative construction of the provision of the act of 1854. The two statutes must be construed together. They are both supplements to the act against usury, and constitute a portion of the general law of the state upon that subject. It is of the utmost importance that their meaning should be precisely defined. The true construction and effect of the law, I think, is to authorize the taking of seven per cent. interest upon contracts made in certain specified districts of this state. One of the parties must not only live in the locality specified, but the contract must be made there. Seven per cent. interest can only be taken upon contracts made within such locality. Upon all other contracts (except by virtue of some special statute) six per cent. continues to be the legal rate of interest, and contracts upon which a high rate is reserved are usurious.

Where, then, was this contract made? The mortgagee resides in the city of Newark, the mortgagor in the county of Sussex. The negotiation for the money was carried on and completed, the bond and mortgage executed and delivered, and the money paid to the mortgagor, in the county of Sussex. As to these facts there is no dispute. Nor do I find in the testimony the least evidence of the contract being made elsewhere. The facts are very clearly stated by David Ryerson, esq., by whose agency the loan was made. The property of the mortgagors was advertised for sale under an execution. They applied to Mr. Ryerson, who was president of the Sussex Bank and the father-in-law of the complainant, for a loan of

money. He agreed to procure the money for them, or failing in that, to see that they had the money in time to save their property from being sold. The terms of the contract, the amount of the loan, the time of payment, the security to be given, and the rate of interest were all agreed upon at Newton between Mr. Ryerson and the mortgagors. He gave the instructions to the attorney, and furnished the money for which the mortgage was given. All this must have been done by him as the agent of McMurtry.

But it is urged that the mortgagors employed Mr. Ryerson to procure the loan for them, that they paid him for that purpose, and that he, as their agent, negotiated the loan on their behalf with McMurtry. All that is said on this point by the witness is, " I procured a loan of that amount for them from William McMurtry." Where, when, or how that contract was made we are not informed. For all that appears in evidence it might have been made at Newton.

But assuming that the application for the loan and the authority to make it was given in Essex, still the contract for the loan was not made there. The utmost that can be said is, that Mr. Ryerson, in executing the contract, acted as agent of both parties. He applied to McMurtry for the loan as the agent of Giveans. He was authorized by McMurtry, as his agent, to make the loan on his behalf. But the contract for the forbearance of the money was made at Newton.

If McMurtry had gone to Newton, and there agreed that Ryerson should make the loan on his behalf, and furnished him the money to be loaned, and the parties had then gone to Newark and executed the contract there in pursuance of this authority, it would scarcely be pretended that the loan would have been usurious on .the ground that it was not made in the county of Essex.

Or if, upon the evidence in the case, the rate of interest had been seven per cent. in Sussex, and only six in Essex,

the loan, as made, would not have been deemed usurious on the ground that it was made in Essex.

I am of opinion that this contract is for a greater rate of interest than is allowed by law, and is consequently usurious and void. .

I have arrived at this conclusion with some reluctance, not only from its consequences upon the creditor, but from a belief that the contract was made under a mistake of law and a misapprehension of the party's rights. But there is no pretence of ignorance or mistake of facts, and the law will infer a corrupt intent where the fact of taking more than six per cent. knowingly is proved. *Sussex Bank* v. *Baldwin,* 2 *Harr.* 496.

The bill must be dismissed.